IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 21-CR-276 (CKK) |
| v. | : | 18 U.S.C. § 111(a)(1) |
| **MICHAEL MACKRELL,** | : | |
| **Defendant.** | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Michael Mackrell, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 p.m.. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department (MPD) were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Michael Mackrell's Participation in the January 6, 2021, Capitol Riot*

8. Prior to January 6, 2021, the defendant traveled from his home in Wellington, Ohio to Washington, D.C. for the purposes of participating in a political rally. On January 6, 2021, the defendant wore an earthtone camouflage jacket, an earthtone camouflage baseball cap style hat, green gloves, and black pants; he also wore a green backpack, walked with a dark colored cane, and used an American flag gaiter to cover his mouth and nose. Around 2:30 p.m., the defendant and his son positioned themselves on the front line of rioters on the West Plaza of the U.S. Capitol. Around this time, the defendant engaged with and assaulted law enforcement officers, consisting of both USCP officers and MPD officers on a line protecting the U.S. Capitol from the rioters.

9. Before arriving at the West Plaza, the defendant pushed back barricades with other rioters, forcing law enforcement to abandon their line and retreat closer to the Capitol building to form a new protective line without the use of barricades. By pushing open the barricades and

walking into an area that had been cordoned off, the defendant unlawfully and knowingly entered and remained in a restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, without lawful authority to do so.

10. While there, the defendant engaged in multiple assaults and unlawful conduct, from approximately 2:28 p.m. to 2:35 p.m.

11. For example, at 2:28 p.m., the defendant wrapped his arm around a USCP officer's neck and threw the officer to the ground near the West Plaza of the U.S. Capitol.

12. At 2:29 p.m., the defendant attempted to push a second law enforcement officer, Officer D.H. from the MPD. A few seconds later, the defendant successfully pushed Officer D.H. as he was trying to help his fellow officers hold a line against rioters.

13. Immediately following the assault on Officer D.H., the defendant tackled a third law enforcement officer near the south side of the Capitol's West Plaza.

14. At 2:31 p.m., the defendant rushed and tackled a fourth law enforcement officer, MPD Sergeant P.R., near the Capitol's West Plaza.

15. At 2:34 p.m., the defendant tackled a fifth law enforcement officer near the south side of the Capitol's West Plaza.

16. In another instance, another rioter had started to pick up a piece of what appeared to be plywood. An officer from the protective line jumped on the plywood to keep it on the ground. When the officer jumped on the plywood, the defendant and his son pushed the officer to the ground.

17. When the defendant assaulted multiple law enforcement officers of the MPD and the USCP, by striking the officers, pushing them, and tackling them, the defendant knew that these

officers were engaged in and assisting officers of the United States in the performance of official duties.

### *Elements of the Offense*

18. The parties agree that Assaulting, Resisting or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1) requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the Metropolitan Police Department.

   b. Second, the defendant did such acts forcibly.

   c. Third, the defendant did such acts voluntarily and intentionally.

   d. Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was assisting officers of the United States who were then engaged in the performance of their official duties.

   e. Fifth, the defendant made physical contact with that officer, or acted with the intent to commit another felony.

***Defendant's Acknowledgments***

19.     The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly assaulted Officer D.H., by pushing Officer D.H. when he was assisting an officer and employee of the USCP, and the defendant knew that the officers were engaged in the performance of official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ *Elizabeth. N Eriksen*
Elizabeth N. Eriksen
Trial Attorney, Detailee
VA Bar No. 72399
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 616-4385:
Elizabeth.Eriksen@usdoj.gov

/s/ Nialah S. Ferrer
Nialah S. Ferrer
NY Bar No. 5748462
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Nialah.Ferrer@usdoj.gov
(202) 557-1490

## DEFENDANT'S ACKNOWLEDGMENT

I, Michael Mackrell, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10-16-23

Michael Mackrell
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10-16-23

Claire Cahoon
Attorney for Defendant