## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-CR-276 (CKK)** |
| **MICHAEL MACKRELL** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Michael Mackrell to 30 months' imprisonment, 36 months of supervised release, $2,000 in restitution, and a special assessment of $100. The recommended term of incarceration is at the high end of the Sentencing Guidelines range to which the parties stipulated in their plea agreement. That is the same range determined by the Probation Office.

A high-end recommendation is fully justified here because Mackrell assaulted at least seven police officers on the West Front of the Capitol on January 6, including by tackling some of those officers and throwing one to the ground after wrapping his arm around the officer's neck, but was permitted to plead guilty to single violation of 18 U.S.C. § 111(a). Since the applicable Guidelines range does not fully capture the entirety of Mackrell's assaultive conduct, this Court should impose a sentence at the high end of that range. Mackrell's bringing his 20-year-old son to the January 6 riot and encouraging him to join in the assault against police further supports the government's recommendation.

1

## I.  INTRODUCTION

The defendant, Michael Mackrell, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Mackrell, a former Marine, brought his twenty-year-old son to Washington D.C. from their home in Ohio to participate in the former president's "Stop the Steal" rally. Mackrell and his son then joined the storming of the police line on the West Plaza. Mackrell anticipated violence on January 6 as he wore a gas mask to ward off the effects of chemical irritants. When he arrived on the West Front, Mackrell violently participated in this crowd by pushing back metal barricades, forcing police to abandon their line and retreat closer to the Capitol building to form a new protective line. Later while on the West Plaza, Mackrell punched, pushed, and tackled several police officers as they were attempting to protect the U.S. Capitol building and grounds.

The government recommends that the Court sentence Mackrell to 30 months of incarceration for violating 18 U.S.C. § 111(a)(1). A 30-month sentence reflects the gravity of Mackrell's conduct, but also acknowledges his early admission of guilt and his honorable service

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

as a United States Marine.

## II.     FACTUAL BACKGROUND

### A.     The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF No. 84, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.     Michael Mackrell's Role in the January 6, 2021 Attack on the Capitol

#### *Approach to the Capitol*

Michael Mackrell, a former Marine, participated in the January 6 attack on the Capitol. His crimes are documented through a series of videos provided to the FBI by concerned citizens, body worn cameras from the Metropolitan Police Department ("MPD"), open-source video, and surveillance footage from inside of the Capitol.

Mackrell traveled to Washington, D.C. from his home in Wellington, Ohio with his son, Clifford Mackrell. Mackrell and his son went to the "Stop the Steal" rally and thereafter to the U.S. Capitol. On January 6, Mackrell wore an earth toned camouflage jacket, a brown backpack, a green backpack, and carried a cane. Mackrell's son wore a blue jacket. They are both seen walking towards the Capitol with gas masks on in anticipation of violence. *See* Exhibit 1.



*Exhibit 1: Mackrell Approaches the U.S. Capitol Wearing a Gas Mask*

Mackrell immediately engaged in violence when he arrived on the West Front of the U.S. Capitol by pushing back the bicycle-rack metal barricades used by police officers to form a protective line. *See* Exhibits 2, 2A, 3.



*Exhibit 2A: Still Image From Open Source Video titled "Political Trans Tribune"(Exhibit 2 – 4:10 timestamp)*

4



*Exhibit 3 – Still Photo of Mackrell (outlined in yellow) at the police line on the West Front*

**Mackrell's Assault of MPD Officer D.H.**

At approximately 2:29 p.m., Mackrell encountered MPD Officer D.H. who was a member of a line of police attempting to prevent rioters from breaching the U.S. Capitol. Rioters were able to break past the metal barricades set up by these officers and soon after began fighting them. At this time, Mackrell ran up to Officer D.H. and shoved him. *See* Exhibit 4A.



*Exhibit 4A: Still Image from Officer's D.H.'s BWC (Exhibit 4 – 14:29:06 timestamp)*

5

Immediately following this, Mackrell's son continued the assault on Officer D.H., and both father and son assaulted other officers. They pushed these officers into the concrete wall behind them, preventing the officers from holding the line and protecting the U.S. Capitol. Officers were able to push Mackrell away, causing him to fall to the ground. *See* Exhibit 4B. Officer D.H. and other officers then retreated from the mob.



*Exhibit 4B: Still Image from Officer's D.H.'s BWC, Showing Mackrell on the Ground*
*(Exhibit 4 – 14:29:35 timestamp)*

***Multiple Assaults on Other Police Officers on the West Plaza***

While on the West Plaza, Mackrell assaulted several other police officers. After pushing the barricades back, Mackrell struck one officer and attempted to pull the gas mask off another. *See* Exhibits 2B.



*Exhibit 2B: Still Image From Open Source Video titled "Political Trans Tribune" Showing*
*Mackrell Grabbing the Gas Mask of an Officer (Exhibit 2 – 8:52 timestamp)*

At approximately 2:28 pm, Mackrell wrapped his arm around a United States Capitol

Police ("USCP") Officer's neck and threw him to the ground. *See* Exhibit 5A.



*Exhibit 5A: Still Image from YouTube: Patriots at the Capitol 1-6-2021[2]  (Exhibit*
*5 – 0:03 timestamp)*

---

[2]  Video available at https://www.youtube.com/watch?v=VmJRqUYjlY4&t=46

A few minutes later, immediately following the assault on Officer D.H., Mackrell tackled a fourth police officer near the south side of the Capitol's West Plaza. *See* Exhibit 6A.



*Exhibit 6A – Still Image from YouTube | The New York Times (nytimes) How Trump Supporters Took the U.S. Capitol Visual Investigations.mp4 (Exhibit 6 – 2:17 timestamp)*

At approximately 2:31 pm, Mackrell rushed and tackled a fifth police officer, who has been identified as MPD Sergeant P.R. *See* Exhibit 6B.



*Exhibit 6B: Still Image from YouTube | The New York Times (nytimes) How Trump Supporters Took the U.S. Capitol Visual Investigations.mp4 (Exhibit 6 – 2:10 timestamp)[3]*

---

[3] Video Available at https://www.youtube.com/watch?v=jWJVMoe7OY0.

At approximately 2:34 pm, Mackrell tackled a sixth police officer near the south side of the Capitol's West Plaza. *See* Exhibit 7A.



*Exhibit 7A: Still Image from BWC of Assault (Exhibit 7 – 14:34:14 timestamp)*

Finally, Mackrell and his son helped push a piece of plywood into an officer. *See* Exhibit 8. In total, Mackrell assaulted at least seven different police officers while near the West Plaza of the U.S. Capitol.



*Exhibit 8: Still Photo of Mackrell Pushing Against Plywood*

### III.     THE CHARGES AND PLEA AGREEMENT

On March 29, 2023, a federal grand jury returned a superseding indictment charging Mackrell with ten counts, including assaulting, resisting, or impeding certain officers in violation of 18 U.S.C. § 111(a)(1). *See* ECF No. 65. On October 20. 2023, Michael Mackrell was convicted of one count of assault, resisting, or impeding certain officers (Count Two) based on a guilty plea entered pursuant to a plea agreement.

### IV.     STATUTORY PENALTIES

Mackrell now faces sentencing on Count Two of the superseding indictment in violation of 18 U.S.C. § 111(a)(1).

As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, Mackrell faces up to 8 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, restitution, and a mandatory special assessment of $100.

### V.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

That Guidelines analysis follows:

Count Three: 18 U.S.C. § 111(a)(1)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a)[4] | Base Offense Level | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | +6 |
| | **Total** | **20** |

---

[4] By cross-reference from U.S.S.G. § 2A2.4(c)(1) (Obstructing or Impeding Officers), which directs that Section § 2A2.2 (Aggravated Assault) be applied if the conduct constituted aggravated assault.

10

Acceptance of responsibility (U.S.S.G. §3E1.1)                                    -3

**Total Adjusted Offense Level:**                                                **17**

*See* Plea Agreement at ¶¶ 5(A).

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. Section 4C1.1 is now in effect but was not considered at the time the parties entered into the plea agreement.

Section 4C1.1 does not apply in this case because Mackrell personally used violence against officers on January 6. U.S.S.G. § 4C1.1(a)(3). Mackrell assaulted at least seven different officers on January 6. The video exhibits show Mackrell's egregious and violent conduct of punching, pushing, choking, and tackling officers on the West Plaza all while wearing a gas mask to protect himself from any irritants officers could use to deter him from assaulting them. The government is aware of at least three cases in which courts have rejected the application of § 4C1.1 to January 6 defendants who engaged in violence, *United States v. Gundersen*, 21-cr-137 (RC); *United States v. Baquero*, 21-cr-702 (JEB) and *United States v Dillard*, 23-CR-49 (JMC).

Finally, to avoid unnecessary litigation, if the court declines to apply § 4C1.1, the government requests that the Court make clear at sentencing that it would have imposed the same sentence regardless of whether § 4C1.1 applies.[5]

---

[5] U.S.S.G. § 5C1.1 has also been amended with a new application note providing that if a defendant receives an offense level reduction under §4C1.1 and either their applicable guideline range is in Zone A or B of the Sentencing Table, or the guideline range overstates the seriousness of the offense, imprisonment may not be appropriate. *See* U.S.S.G. § 5C1.1, comment. n. 10. The government submits that for the same reasons that § 4C1.1 should not be applied in this case, a sentence of imprisonment is appropriate notwithstanding Application Note 10 to § 5C1.1.

The U.S. Probation Office calculated Mackrell's criminal history as category I, which is not disputed. PSR ¶ 49. Accordingly, based on the government's calculation of Mackrell's total adjusted offense level, after acceptance of responsibility, at 17, Mackrell's Guidelines imprisonment range is 24 to 30 months' imprisonment. Mackrell's plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein.

## VI.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.   Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Mackrell's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Specifically, Mackrell violently assaulted at least seven police officers, removed barricades, and participated in breaking the police lines established to protect the U.S. Capitol all while wearing a gas mask to continue his violent behavior. The nature and circumstances of Mackrell's offense were of the utmost seriousness, and fully support the government's recommended sentence of 30 months' imprisonment.

### B.  Mackrell's History and Characteristics

Mackrell has no adult criminal convictions. PSR ¶ 49.

Mackrell honorably served more than five years in the U.S. Marine Corps from 2001 until 2006. PSR ¶ 74. While in the U.S. Marine Corps, Mackrell received training in combat and martial arts. PSR ¶ 75.  Although the government respects that service, Mackrell's violent attacks on

police officers on January 6 was a betrayal of his Marine oath to protect and defend the United States from all enemies, foreign and domestic. His military service, particularly his training in the use of violent force, should have informed him of the great dangers arising from an attack on police by a violent mob of rioters who vastly outnumbered the officers.

The presentence report describes Mackrell as suffering from depression and a long history of medical problems stemming from injuries to his back that have caused him pain and limited his mobility, and that resulted in multiple surgeries and on-going treatment with medication, PSR ¶¶ 66 to 69. Notably, those medical problems did not stop Mackrell from violently attacking seven different police officers, including by tackling them to the ground.

### C.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Mackrell's criminal conduct on January 6 was the epitome of disrespect for the law. In particular, although the government agreed to permit Mackrell to plead guilty to a single violation of 18 U.S.C. § 111(a), the evidence would have readily supported charges for seven separate counts of that offense. Had Mackrell been convicted of seven counts of violating § 111(a), the offense levels for each of those counts would have not have grouped, since each involved a different victim. U.S.S.G. § 4D1.2(a). In that event, the combined offense level would have been substantially higher, U.S.S.G. § 4D1.2(d), and the government would be seeking a significantly higher term of incarceration. For that reason, the government seeks a sentence at the top of the applicable guidelines range here.

**D.      The Need for the Sentence to Afford Adequate Deterrence**

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[6] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

First, although Mackrell has a criminal history category of I, his history of being a combat-trained Marine shows his knowledge of the law and complete disregard of it. As a sworn member of the U.S. Marine Corps, Mackrell took an oath to protect this country from foreign and domestic threats. Mackrell even won awards during his service for his dedication to fighting terrorism on behalf of the United States. He then became part of group that brought terror into our country. His conduct coupled with his history and characteristics warrants a lengthy sentence.

**E.      The Importance of the Guidelines**

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and

---

[6] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

14

adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.    Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."   So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Daniel Leyden*, 21-cr-314 (TNM), Sent. Hrg. Tr. at 38 ("I think the government rightly points out generally the best way to avoid unwarranted sentencing disparities is to follow the guidelines.") (statement of Judge McFadden); *United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr.

at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[7]

---

[7] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

16

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[8]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Galetto*, 21-CR-517 (CKK), the defendant assaulted an officer near the Lower West Tunnel by pushing into him and his shield as he attempted to hold the police line. This Court sentenced Galetto to 27 months imprisonment. Similar to this case, both defendants were convicted by a guilty plea, had no prior criminal history, and were in very violent areas of the riot on January 6. However, Mackrell assaulted at least seven officers, wore a gas mask, and was a former Marine. These additional aggravating factors warrant a higher sentence.

In *United States v. Clayton*, 22-CR-139 (RCL), the defendant verbally harassed police officers on the Upper West Terrace, yelling taunts such as "You guys are losing a lot of bodies. We're coming in, one way or another, we're coming in." As police officers were clearing the north side of the Upper West Terrace, Clayton confronted police three times. He grabbed one officer's

---

[8] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

shield, stole another's baton, shoved a third in the head and grabbed his face mask. When interviewed by the FBI, Clayton lied about his role on January 6, claiming he did not riot or engage in violence, and claiming he found the police baton and attempted to return it. Judge Lamberth sentenced Clayton to 30 months' incarceration. Here, Mackrell assaulted four more officers than Clayton, and Clayton, unlike Mackrell, did not bring his son to the riot.

In *United States v. Grace*, 23-CR-138 (RBW), the defendant assaulted an officer near the Lower West Tunnel. Similar to Mackrell, this defendant was at the front of the mob of rioters who confronted the police, witnessed egregious violence, and pushed officers multiple times. Judge Walton sentenced Grace to a 27-month term of incarceration. Mackrell's military history warrants a higher sentence than the one imposed in *Grace*.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[9]  Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

---

[9] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The victim in this case, Officer D.H., did not suffer bodily injury as a result of Mackrell's assault. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Mackrell must pay $2,000 in restitution, which reflects in part the role Mackrell played in the riot on January 6.[10]  Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Mackrell's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 109.

---

[10] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VIII.   CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 30 months' imprisonment followed by 36 months of supervised release, $2,000 in restitution, and a special assessment of $100.


Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:     */s/ Nialah S. Ferrer*
Nialah S. Ferrer
Assistant United States Attorney
New York Bar No. 5748462
United States Attorney's Office
District of Columbia
(202) 557-1490
nialah.ferrer@usdoj.gov

*/s/ Elizabeth N. Eriksen*
Elizabeth N. Eriksen
VA Bar No. 72399
Trial Attorney, Detailee
601 D Street, N.W. Washington, D.C. 20001
(202) 616-4385
Elizabeth.Eriksen2@usdoj.gov